UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| EVERETT AYTCH, | : Case No. 3:16-cv-143 |
| Plaintiff, | : |
| | : District Judge Walter H. Rice |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

Plaintiff Everett Aytch brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  He applied for benefits on February 17, 2009, asserting that he could no longer work a substantial paid job.  On July 29, 2011, Administrative Law Judge (ALJ) Robert Iafe found that he was not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and he filed a previous action in United States District Court for the Southern District of Ohio.  *See Aytch v. Commissioner of Social Security*, 3:13-cv-135, 2014 WL 4443286 (S.D. Ohio Sept.8,

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

2014) (D.J. Rice). The Court reversed the Commissioner's decision and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. *Id.* at *2. On December 18, 2015, ALJ Eric Anschuetz concluded Plaintiff was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12), and the administrative record (Doc. #s 6-7).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Anschuetz's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since December 31, 2000. He was twenty-eight years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education. *See* 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Anschuetz that his disability began on December 31, 2000 when he "started having these major, major flare-ups …" where he could not move. (Doc. #7, *PageID* #1081). "[M]y whole body just, like, locked up on me. Swelling in both legs and feet. Upper body pain. Joint pain. Went to the emergency room, and they tried several different kinds of medications to try to ease the

2

pain, and stop the swelling. And I had to learn how to use my joints and stuff all over — my leg stuff all over again" *Id.* After a few months, Plaintiff attempted to go to work at a tax preparation service but only stayed four months. *Id.* at 1082.

In 2007, Plaintiff worked part-time as a security guard. *Id.* While at work one day, his whole body locked up and he was unable to move. *Id.* He could not walk to his car and had to be carried. *Id.* His co-workers drove him home, he collapsed as he tried to get out of the car, and they drove him to Miami Valley Hospital. *Id.* at 1082-83.

From 2004 to 2008, Plaintiff worked in customer service for Global Reader Services. *Id.* at 1083. He had to get up from his desk every five to ten minutes because his joints would start to lock up, his legs would start burning and tingling, and his groin area would go numb. *Id*. at 1083, 1104. He was let go because "they [were] tired of me coming to work, not being able to move, not being able to sit stationary and do the job." *Id.* at 1083. After losing his job, he lost his house as well. *Id.* at 1084.

In February 2014, Plaintiff worked as a server at Red Lobster. *Id.* at 1085. He worked for approximately three months until he had surgery. *Id*. After surgery, he returned to Red Lobster but only lasted a little over one month. *Id.* at 1084. During the same time period he worked part time at Burger King. *Id.* at 1085-86.

In early 2015, E.C. Staffing employed Plaintiff part time for a month and a half as a houseman. *Id.* at 1078. He was responsible for trash pickup and pushing a linen cart. *Id.* at 1079. He usually worked twenty-four hours per week. *Id*. He stopped working because "my feet and stuff started swelling back up. I started having issues doing the job.

And they wasn't going to increase the hours at all." *Id.* at 1080. He looked for a new job doing office work but was unable to find one. *Id.*

Plaintiff has not had a full body flare-up recently, "but I still do have flare-ups where I can wake up, and try to get out [of] the bed, and have to lean on []the bed, my dresser, the wall of the bathroom, my sink. When I sit down to use the bathroom, [and] try to get up, I [have] to put my elbow across the sink, and lift myself up with the top of the toilet …." *Id.* at 1107. He experiences these ten to fifteen times per month. *Id.*

Plaintiff has had some difficulty with his health insurance. He used to see Dr. Sullivan for his foot problems but his insurance will not cover appointments until he meets his deductible. *Id.* at 1092. He then began treatment at Ohio Southwest. *Id.* Unfortunately, he is "in collections with them …." *Id.* As a result, he does not have a podiatrist. *Id.*

Plaintiff has difficulty with his hands cramping and locking up. *Id.* at 1106. When he uses a computer, they start to go numb and burn. *Id.* He used to type 120 words per minute but now can only type 29. *Id.*

Plaintiff takes Allopurinol, Norvasc, and aspirin regularly. *Id.* at 1093. He tried to take medication for pain but it gave him "a psychotic nightmare." *Id.* Before his surgery, a doctor in an emergency room prescribed a cane. *Id.* at 1097. He uses it three or four days per week. *Id.* at 1098. He also elevates his feet for a "majority of the day" and uses ice and heat. *Id.*

Plaintiff lives in a house with his wife and son. *Id.* at 1098-99. He does not have a driver's license. *Id.* at 1099-1100. He estimated that he can lift and carry ten pounds

4

and walk a block and a half. *Id.* at 1100. When he gets tired of sitting in bed, he sometimes tries to walk to stretch his joints. *Id.* On an average day, Plaintiff gets up at six or seven o'clock and goes to bed between nine and eleven o'clock. *Id.* at 1101. During the day he spends about an hour on his computer, reading and e-mailing. *Id.* He does some chores such as wiping the window in the bathroom, laundry, and dishes. *Id.* at 1102.

### B. Dr. Alex's Testimony

Dr. Maurice Alex, a medical expert, testified at the first hearing on May 9, 2011. (Doc. #6, *PageID* #67). He first asked Plaintiff a few questions. He asked why Plaintiff did not receive medical treatment between 2002 and 2006. *Id.* at 78-79. Plaintiff explained that he could not afford it so he went to the emergency room instead because part of his bills was covered by "hospital insurance." *Id.* Dr. Alex asked if any doctor had advised him to lose weight or be on a very strict diet, and Plaintiff responded that he was on a diet but no doctor had told him that he needed to lose between seventy-five and one-hundred pounds. *Id.* at 79-80.

Dr. Alex testified that Plaintiff did not meet Listing 1.04 Disorders of the Spine; 4.04 Ischemic Heart Disease; 12.04 Affective Disorders; 14.09[2] Inflammatory arthritis; or 1.02(A) Major Dysfunction of a Joint(s)–involvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively. *Id.* at 80-81.

---

[2] The transcript indicates that Dr. Alex said "14.08" and then discussed rheumatoid arthritis. Because Listing 14.08 addresses a human immunodeficiency virus (HIV) infection, it is likely that he was referring to Listing 14.09.

5

He further explained that although Plaintiff had gone to the emergency room several times for gout flare-ups, x-rays of his joints are always negative. *Id.* at 81. Further, when he ran out of medication and was hospitalized, he responded rapidly to the medication given by the hospital and his symptoms disappeared. *Id.* Dr. Alex emphasized that the records indicate "pain is out of proportion to physical exam…. [and] symptoms are out of proportion to findings." *Id.* at 81-82 (citations omitted). Despite this, he opined, "there is no question [Plaintiff] has gout. There's a question whether he took his medicine on a routine basis and whether he was following a diet that was sufficient in trying to keep his uric acid down along with the medication he's taking for gout." *Id.* at 82.

When further questioned by Dr. Alex, Plaintiff testified that he has flare-ups at least four or five times in a six-month period. *Id.* at 86. They usually last seven to ten days but can last for weeks or months at a time. *Id.* at 86-87. Dr. Alex opined, "It is not clinically reasonable [for someone to have that many attacks] nor the extent of the discomfort lasting that many days." *Id.* at 87.

Dr. Alex opined, "[Dr. Torello] stated that he was capable of sedentary work and with his history, with the arthritic changes that he is showing, the osteo arthritic changes that he is showing, with his weight and with the gout, I would say to the court that I think that he should be limited to sedentary work." *Id.* at 82. Additionally, he should avoid excessive heat and cold and high humidity. *Id.* at 83. He should not climb scaffolds or ladders, and his ability to kneel, crawl, and bend are limited to only what is necessary for activities of daily living. *Id*.

6

### C. Medical Opinions

#### i. Antony T. Jacob, M.D.

Dr. Jacob, Plaintiff's treating physician, completed a medical assessment in February 2009. *Id.* at 920. He opined Plaintiff could not walk at all in an eight-hour workday, could sit for four hours, and could not lift or carry any weight. *Id.* at 921. His ability to push/pull and bend is extremely limited and repetitive foot movements are markedly limited. *Id.*

On June 19, 2009, Dr. Jacob opined in a letter that Plaintiff was "not ready to return to work at this time. He is not able to do any kind of work that involves a lot of lifting, bending, or walking." *Id.* at 700.

Dr. Jacob completed a second medical impairment questionnaire in February 2011. *Id.* at 971-73. He indicated Plaintiff had a history of joint pain, swelling, and tenderness. *Id.* at 971. He also has morning stiffness and limitation of motion in his joints. *Id.* Plaintiff had inflammation in both knees at his most recent examination. *Id.* Dr. Jacob opined Plaintiff has significant fatigue; no limitation of activities of daily living; moderate limitation in maintaining social functioning; and mild limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace. *Id.* at 972. He can stand for thirty minutes at one time, sit for one hour, frequently lift five pounds, occasionally bend, never stoop, and occasionally raise either arm over shoulder level. *Id.* Plaintiff cannot work for any amount of time. *Id.*

7

### ii. Jonathan Sullivan, DPM

Dr. Sullivan, Plaintiff's treating podiatrist, completed a medical assessment on February 2, 2015.  (Doc. #7, *PageID* #s 1338-39).  He diagnosed diffuse osteoarthritis and left-side calcaneal-navicular coalition.  *Id.* at 1238.  Dr. Sullivan opined Plaintiff could stand for one hour at one time.  *Id.*  Further, he needed to frequently elevate his legs at or above his waist.  *Id.*  Dr. Sullivan also indicated that Plaintiff is not "able to walk at a reasonable pace on rough or uneven surface, able to walk enough to shop or bank, able to climb a few steps at a reasonable pace with the use of a single handrail[.]"  *Id.*  Additionally, Plaintiff's pain is severe.  *Id.*

### III.  Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir.

8

2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Anschuetz to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five

9

sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since December 31, 2000.

Step 2: He has the severe impairments of gout; osteoarthritis of bilateral knees; status post "big toe replacement" surgery in May 2014; and obesity.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … except: [Plaintiff] can lift a maximum of 10 pounds occasionally and frequently. He can stand and/or walk a total of two hours in an eight-hour workday. He can sit for a total of six hours in an eight-hour workday. Due to his foot impairments, he can only occasionally operate foot controls. [Plaintiff] can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. He can occasionally balance and stoop, but he can never kneel, crouch, or crawl. [Plaintiff] must avoid workplace hazards, such as unprotected heights and moving mechanical parts. He cannot tolerate exposure to humidity and wetness in the workplace; nor can he tolerate extremes of heat and cold. He must have the option to sit or stand at will at his workstation. [Plaintiff] has no mental health limitations."

Step 4: He is unable to perform any of his past relevant work.

Step 5: He could perform a significant number of jobs that exist in the national economy.

(Doc. #7, *PageID* #s 1015-28). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 1028.

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

## V. Discussion

Plaintiff contends that the ALJ failed to properly consider the medical opinions of record. The Commissioner maintains that substantial evidence supports the ALJ's assessment of the opinion evidence.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight

11

placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).  The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

The ALJ in the present case copied the previous ALJ's assessment of Dr. Jacob's opinions—almost word for word—but added some further analysis.  Significantly, in Plaintiff's previous case, the Court found that the previous ALJ "failed to conduct a controlling weight analysis and failed to give good reasons for the weight ultimately accorded Dr. Jacob's opinions.  Accordingly, the ALJ's conclusions in this regard are not supported by substantial evidence." *Aytch v. Commissioner of Social Security*, 3:13-cv-135, 2014 WL 4080075, at *5 (S.D. Ohio Aug. 19, 2014) (M.J. Newman), *adopted in full,* 2014 WL 4443286 (S.D. Ohio Sept.8, 2014) (D.J. Rice).

The portion added by ALJ Anschuetz contains a brief analysis of the treating physician rule.  Specifically, "I note that the regulations direct that well supported treating physician opinions that are consistent with other substantial evidence of record must receive controlling weight." (Doc. #7, *PageID* #1025) (citing 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); Soc. Sec. R. 96-2p, 1996 WL 374188).  The ALJ's recitation of the treating physician rule, however, is not correct.  A treating physician's opinion need not be consistent with other substantial evidence—it need only be "not inconsistent" with other substantial evidence of record.  The difference is significant. The Social Security Administration defines "not inconsistent:"  "This is a term used to indicate that a well-supported treating source medical opinion need not be supported

12

directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Soc. Sec. R. 96-2p, 1996 WL 374188, at *3. By needing Dr. Jacob's opinions be consistent with the record, the ALJ required more of him than the Regulations require. This constitutes error. *See Bowen*, 478 F.3d at 746 ("[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." (citing *Wilson,* 378 F.3d at 546-47)).

However, even if ALJ Anschuetz had used the correct standard, his findings are not supported by substantial evidence. He found, "the portions of Dr. Jacob's opinions that suggest that the claimant cannot do work, at least within the sedentary functional level, … are contradicted by other opinions of record." (Doc. #7, *PageID* #1025). However, the ALJ does not provide any further explanation or any indication of which opinions he is referring to.

The ALJ further found, "despite allegations that suggest only that [Plaintiff's] condition has continued to worsen, he earned more working in 2014, part of the time as a server, than he had since 2000. Consequently, Dr. Jacob's conclusions that [Plaintiff] cannot walk and cannot lift more than five pounds have been contradicted by [Plaintiff's] own actions as well." *Id.* at 1025. Plaintiff worked at Red Lobster from February to May 2014. *Id.* at 1085. He then had surgery and returned to work at the end of August 2014 and continued to work until October 1, 2014. *Id.* After Plaintiff's surgery, Dr. Sullivan released Plaintiff to go back to work with limitations. *Id.* at 1090. Specifically, Plaintiff

13

should not carry more than ten pounds and he should not work for more than two to three hours. *Id*. Plaintiff testified that despite these limitations, he usually worked seven-hour shifts and carried tray that weighed between five and ten pounds. *Id*. He explained that he exceeded the limitations because "I thought I could do it. I thought I could even with the way I was hurting and stuff. I have a family to try to take care of, and child support stuff. So, I try to get my body to do something that it couldn't possibly do, but I tried. I kept trying." *Id.* at 1091. Unfortunately, after returning to work for a little over one month, Plaintiff was terminated from Red Lobster, "They told me I was a good server, but they didn't feel that I was adequate once I came back after the surgery. … They said that I looked like I was always – my face looked like I was always in pain or agitated." *Id.* at 1089.

 It is difficult to understand how Plaintiff's attempt to work contradicts Dr. Jacob's opinions. Notably, Dr. Jacob's most recent opinion is from February 25, 2011—three years prior to Plaintiff working at Red Lobster. (Doc. #6, *PageID* #971). Despite the time difference, Plaintiff's attempt—and resulting failure—at working is consistent with Dr. Jacob's opinion that he is not able work at a job that involves standing for long periods of time. The ALJ fails to mention that although Plaintiff worked at Red Lobster for a total of over four months, he only made $1,704.27. Finally, it is illogical to fault Plaintiff for attempting to work. Despite his recurring pain and medical problems, he attempted to support himself and his family. His effort should not be used against him when determining his eligibility for benefits.

14

The little ALJ Anschuetz added to the previous ALJ's assessment of Dr. Jacob's opinions is inadequate, incorrect, and not supported by substantial evidence.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4] A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking.  However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law, and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Everett Aytch was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.


Date:  July 25, 2017                             *s/Sharon L. Ovington*
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).